UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
B. DAVID SCHREIBER as the EXECUTOR of the ESTATE of REBECCA TWERSKY

Plaintiff,

v.

NORTHWESTERN MUTUAL LIFE INSURANCE CO.,

Defendant.
--------------------------------------------------------------X

**MEMORANDUM AND ORDER**
23-CV-5068-SJB-JMW

**BULSARA, United States District Judge:**

This action arises out of four disability income insurance policies issued by Defendant Northwestern Mutual Life Insurance Co. ("Northwestern") to Plaintiff David Schreibers's ("Schreiber") wife, Rebecca Twersky ("Twersky").[1] Schreiber asserts that Northwestern breached the contracts when it stopped making payments on March 28, 2022. Twersky, according to Schrieber—her estate's Executor—was entitled to an additional 24 months of payments beginning in November 2020, and ending in November 2022, as a result of a new disability. (Compl. dated Mar. 3, 2023 ("Compl."), attached to Notice of Removal as Ex. A, Dkt. No. 2-1 ¶¶ 7–9, 15, 23–24). Northwestern contends the policies were properly terminated in March 2022. (Defs.' Mot. for Summ. J. dated Dec. 12, 2025 ("Defs.' Mot."), Dkt. No. 25-3 at 7–8). The breach of contract

[1] Twersky passed away after the filing of this litigation, and Schreiber was subsequently substituted as Plaintiff. (*See* Order Granting Motion to Substitute Plaintiff dated Feb. 17, 2024).

allegation is the sole claim, (Compl. ¶¶ 4–30), and Northwestern has moved for summary judgment. For the following reasons, Northwestern's motion is granted.

## STANDARD FOR SUMMARY JUDGMENT

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113 (2d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "In determining whether summary judgment is appropriate, [the Court] must resolve all ambiguities and draw all reasonable inferences against the moving party." *Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the burden of "demonstrat[ing] the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" in one of two ways. Fed. R. Civ. P. 56(c)(1). It may cite to portions of the record "including depositions, documents, electronically stored information, affidavits or declarations, . . . admissions, interrogatory answers, or other materials." *Id.* R. 56(c)(1)(A). Alternatively, it may show that "the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* R. 56(c)(1)(B); *cf. Farid v. Smith*, 850 F.2d 917, 924 (2d Cir. 1988).

In moving for summary judgment or answering such a motion, litigants are required by the Local Rules to provide a statement (a Rule 56.1 statement) setting forth purported undisputed facts or, if controverting any fact, responding to each assertion. *See* Loc. Civ. R. 56.1(a)–(b). In both instances, the party must support its position by citing to admissible evidence from the record. *Id.* R. 56.1(d); *see also id.* R. 56(c) (requiring reliance on admissible evidence in the record in supporting or controverting a purported material fact). "The purpose of Local Rule 56.1 is to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001), *abrogated in part on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009).

Where claims in opposing Rule 56.1 statements are "genuinely disputed," the Court will consider the evidentiary sources of the claims. *Halberg v. United Behav. Health*, 408 F. Supp. 3d 118, 146 (E.D.N.Y. 2019) (adopting R. & R.). In evaluating the sources of claims made in dueling Rule 56.1 statements, the Court cannot—as is true for the summary judgment motion as a whole—weigh evidence or assess the credibility of witnesses. *See United States v. Rem*, 38 F.3d 634, 644 (2d Cir. 1994). Furthermore, "[l]egal arguments are impermissible in any Rule 56.1 Statement and are to be disregarded." *Taveras v. HRV Mgmt., Inc.*, No. 17-CV-5211, 2020 WL 1501777, at *2 (E.D.N.Y. Mar. 24, 2020); *Lawrence v. Cont'l Cas. Co.*, No. 12-CV-412, 2013 WL 4458755, at *1 n.1 (E.D.N.Y. Aug. 16, 2013) ("Both parties have submitted Local Rule 56.1 statements and responses to each other's statements that mix factual assertions with legal argument and therefore

fail to meet the requirements of Local Rule 56.1. The facts . . . are taken from those assertions contained in the Local Rule 56.1 statements that comply with Local Rule 56.1[.]" (citations omitted)). The court may not grant summary judgment based on a fact in a Rule 56.1 statement—even if undisputed—not supported by admissible evidence. *E.g.*, *Giannullo v. City of New York*, 322 F.3d 139, 142–43 (2d Cir. 2003) (vacating grant of summary judgment to defendants based on facts enumerated in Rule 56.1 statement supported only by arguments in briefs rather than admissible evidence). The Court must also disregard conclusory denials that lack citations to admissible evidence. *Rodriguez v. Schneider*, No. 95-CV-4083, 1999 WL 459813, at *1 n.3 (S.D.N.Y. June 29, 1999) ("*Rule 56.1 statements are not argument.* They should contain factual assertions, with citation to the record. They should not contain conclusions[.]"), *aff'd*, 56 F. App'x 27, 29 (2d Cir. 2003). Also, where the opposing party fails to specifically controvert a numbered paragraph in the Rule 56.1 statement, the statement by the moving party "will be deemed to be admitted." Loc. Civ. R. 56.1(c). The Court also does not give any consideration to hearsay, speculation, or inadmissible evidence in evaluating declarations or affidavits. *Pacenza v. IBM Corp.*, 363 F. App'x 128, 130 (2d Cir. 2010) ("[A] court is obliged not to consider inadmissible evidence at the summary judgment stage[.]"); *Crawford v. Dep't of Investigation*, No. 05-CV-5368, 2007 WL 2850512, at *2 (S.D.N.Y. Oct. 1, 2007) ("[A] non-moving party 'must set forth specific facts showing that there is a genuine issue for trial;' he or she 'may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful.'" (quoting *Woodman v.*

*WWOR-TV, Inc.*, 411 F.3d 69, 75 (2d Cir. 2005))), *aff'd*, 324 F. App'x 139, 143 (2d Cir. 2009).

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Court finds the following facts—drawn from the pleadings, the parties' respective Rule 56.1 statements, and supporting affidavits and exhibits attached thereto—are undisputed unless otherwise noted. Where a relevant genuine dispute exists, the Court highlights both parties' versions of the facts. But the Court does not consider portions of the parties' Rule 56.1 statements that are legal conclusions, irrelevant, or merely objections to inferences drawn from the opposing party's statements.

Twersky was the named insured in four disability income insurance policies issued by Northwestern. (Def.'s 56.1 Statement dated Dec. 12, 2025 ("Def.'s 56.1 Stmt."), Dkt. No. 25-2 ¶¶ 1, 4; Pl.'s Resp. to Def.'s 56.1 Stmt. dated Mar. 9, 2026 ("Pl.'s 56.1 Resp."), Dkt. No. 25-21 ¶¶ 1, 4; *see* Policy dated Aug. 1, 1990, attached to Def.'s 56.1 Stmt. as Ex. B, Dkt. No. 25-6; Policy dated Jan. 1, 1992, attached to Def.'s 56.1 Stmt. as Ex. C, Dkt. No. 25-7; Policy dated May 1, 1993, attached to Def.'s 56.1 Stmt. as Ex. D, Dkt. No. 25-8; Policy dated Feb. 1, 1994, attached to Def.'s 56.1 Stmt. as Ex. E, Dkt. No. 25-9 (collectively, the "Policies")). The Policies were intended to provide replacement income in the event Twersky became "totally or partially disabled" and was unable to work. (Policies § 1.1). The amount Northwestern must pay is based on whether the insured is fully or partially disabled and the maximum monthly benefit in the policy. (*See* Policies at 3 (Full Benefit Per Month ranging from $ 220 (Policy dated Jan. 1, 1992)

to $ 5,450 (Policy dated Aug. 1, 1990))). Total disability payments are owed when the insured is "unable to perform the principal duties of [her] occupation," while partial disability requires at least a 20 percent loss of working capacity. (*Id.* §§ 1.2, 1.3). Annual premiums are tied to the benefit owed—the higher the possible benefit, the higher the premium. (*Id.* at 3).

Twersky first submitted a claim to Northwestern for benefits on April 1, 2020. (Def.'s 56.1 Stmt. ¶ 10; Pl.'s 56.1 Resp. ¶ 10; Request for Disability Benefits, attached to Def.'s 56.1 Stmt. as Ex. F, Dkt. No. 25-10 ("Claim")). The Claim requested benefits for disability beginning in March 2017 for leiomyosarcoma, a form of cancer, (Def.'s 56.1 Stmt. ¶ 10; Pl.'s 56.1 Resp. ¶ 10; Claim at 1), and lists the dates from March 2017 through March 2020 that Twersky was unable to work or that she worked in a reduced capacity, (Def.'s 56.1 Stmt. ¶ 11; Pl.'s 56.1 Resp. ¶ 11; Claim at 1–3). Northwestern agreed to make payments and recognized two periods of disability: (1) beginning June 4, 2017[2] and ending and on February 8, 2018, (Def.'s 56.1 Stmt. ¶¶ 14–15; Pl.'s 56.1 Resp. ¶¶ 14–15; Letter from Northwestern to Twersky dated Oct. 27, 2020, attached to Def.'s 56.1 Stmt. as Ex. G, Dkt. No. 25-11), and (2) beginning July 7, 2019 and ending June 3, 2020 (Def.'s 56.1 Stmt. ¶¶ 17–18; Pl.'s 56.1 Resp. ¶¶ 17–18; Letter from Northwestern to Twersky dated Oct. 27, 2020, attached to Def.'s 56.1 Stmt. as Ex. H, Dkt. No. 25-12).

On December 29, 2020, Schreiber submitted a request to continue benefits because Twersky had been hospitalized due to a "reaction to chemotherapy" as of

---

[2] The Policies all have a 90-day elimination period, meaning that benefits do not begin until the "91st day of disability in the first 180 days after the state of a disability." (Policies at 3 (defining "Beginning Date")).

November 13, 2020, which Northwestern accepted, and they continued to pay benefits. (Def.'s 56.1 Stmt. ¶¶ 19, 31; Pl.'s 56.1 Resp. ¶¶ 19, 31; Request for Continuance of Disability Benefits dated Dec. 28, 2020, attached to Def.'s 56.1 Stmt. as Ex. I, Dkt. No. 25-13).

Ordinarily, each Policy terminated on the "first policy anniversary" year after Twersky turned 65. (Policies § 7.9). Twersky turned 65 on October 11, 2020, (Compl. ¶ 19), while she was receiving benefits. (Letter dated Dec. 21, 2021). And the relevant anniversary date was sometime in 2021.[3] (Def.'s 56.1 Stmt. ¶ 5; Pl.'s 56.1 Resp. ¶ 5; Policies at 3). However, because she was disabled at the time—and receiving benefits—she was entitled to have the Policies continue until she reached the Maximum Benefit Period. (Policies § 7.9).

Northwestern's position was that the Maximum Benefit Period under each policy ended on March 28, 2022, because as of that date Twersky had received 24 months of payments for the same disabling condition. (Def.'s 56.1 Stmt. ¶¶ 31, 38; Pl.'s 56.1 Resp. ¶¶ 31, 38; Letter dated Apr. 18, 2022, attached to Def.'s 56.1 Stmt. as Ex. N, Dkt. No. 25-18, at 1 ("[W]e actually paid 24 months and 28 days of both partial and total disability benefits for this claim, in which we began paying benefits in July 2019.")). That is, as of that date she had received the maximum payments under the Policies.

On October 26, 2021, Northwestern sent a letter to Schrieber to that effect—that the Policies would terminate on March 28, 2022. (Def.'s 56.1 Stmt. ¶ 20; Pl.'s 56.1 Resp.

[3] The Policies terminate on February 1, 2021, August 1, 2021, January 1, 2021, and May 1, 2021. The relevant language is identical in each of the Policies. (Def.'s 56.1 Stmt. ¶¶ 5–9; Pl.'s 56.1 Resp. ¶¶ 5–9).

¶ 20; Letter dated Oct. 26, 2021, attached to Def.'s 56.1 Stmt. as Ex. J, Dkt. No. 25-14). The letter stated "[t]he[] [P]olicies were issued with a Maximum Benefit Period of the policy anniversary following the insured's 65th birthday, but not less than 24 months of benefits. Since this period is coming to a close on March 28, 2022, the policies will terminate[.]" (Letter dated Oct. 26, 2021).

Over the next several months, Schreiber sent a series of letters seeking additional benefits, relying on a number of Policy provisions.[4] Northwestern responded to the letters and various references, reiterating its denials. (Letter dated Dec. 1, 2021, attached to Def.'s 56.1 Stmt. as Ex. K, Dkt. No. 25-15; Letter dated Dec. 21, 2021, attached to Def.'s 56.1 Stmt. as Ex. L, Dkt. No. 25-16; Letter dated Mar. 1, 2022, attached to Def.'s 56.1 Stmt. as Ex. M, Dkt. No. 25-17; Letter dated Apr. 18, 2022, attached to Def.'s 56.1 Stmt. as Ex. N, Dkt. No. 25-18 (collectively, "Response Letters")).

Schreiber's core argument was that a new disability occurred in November 2020—prior to the Policies' termination—and a new 24-month period begin on that date. He relied on Section 1.11 ("Benefits for Separate Disabilities") of the Policies, which provides that "[e]ach separate time the Insured is disabled, a new Initial Period, Beginning Date and Maximum Benefit Period start." Northwestern rejected Schrieber's argument. It relied on Section 1.10 ("Disability with Multiple Causes") of the Policies, which provides that "[i]f the Insured is disabled from more than one cause, the amount and duration of benefits will not be more than that for any one of the causes."

[4] Only Northwestern's responses to Schreiber were provided to the Court—neither party attached the correspondence from Schreiber.

According to Northwestern—even assuming that Twersky suffered from a new disability in November 2020—because she was disabled and receiving benefits at the time for her other, prior disability, Section 1.10 capped the maximum benefit at 24 months. (*See generally* Response Letters). And Section 1.11's carve-out for additional benefits period could not have applied, because Twersky was not disabled again in November 2020 "for a separate time," since on that date she was already disabled.

Twersky filed this action on March 3, 2023 in New York state court, and Northwestern removed the case here. (*See* Notice of Removal dated July 5, 2023, Dkt. No. 2). The Complaint alleges that Defendant should have made payments for 24 months after the November 2020 disability "through at least November 13, 2022." (Compl. ¶ 23). Schreiber's declaration clarifies that his claim is for unpaid benefits in the 24-month period following the onset of Schreiber's November 2020 chemotherapy reaction, which would extend the termination date to November 2022 from when the policies actually terminated in March 2022. (Decl. of Schreiber dated Mar. 9, 2026, attached to Pl's Opp., Dkt. 25-22 ¶ 2 ("Pl.'s Decl.") ("Plaintiff is making a claim for $ 78,075.00, representing non-payment of benefits from the period of March 28, 2022 through November 12, 2022, a period of approximately 7 ½ months, at a rate of $ 10,410.00 per month.")).

On November 15, 2023, Twersky's counsel notified the Court that Twersky had passed away, and Schreiber was subsequently substituted pursuant to Federal Rule of Civil Procedure Rule 25. (*See* Letter from Daniel Hirschel dated Nov. 15, 2023, Dkt. No. 7; Order Granting Motion to Substitute Plaintiff dated Feb. 17, 2024, Dkt. No. 9). The

parties completed briefing on Defendant's summary judgment motion on April 1, 2026. (Def.'s Mot; Pl.'s Opp'n to Def.'s Mot. dated Mar. 9, 2026 ("Pl.'s Opp'n"), Dkt. No. 25-20; Def.'s Reply in Supp. of Def.'s Mot. dated Apr. 1, 2026 ("Def.'s Reply"), Dkt. No. 25-23).

## DISCUSSION

The parties agree that New York law governs this dispute. (*See* Def.'s Mot. at 8–9; Pl.'s Opp. at 4–6). And the Court therefore decides this motion under New York law. *See Martinez v. Bloomberg LP*, 740 F.3d 211, 223 (2d Cir. 2014) ("[P]arties by their acquiescence . . . may induce the trial court to assume that foreign law is similar to that of the forum, with the result that a court does not err when it articulates its decision by reference to the law of the forum." (quotation omitted)); *e.g., Blodgett v. Siemens Indus., Inc.*, No. 13-CV-3194, 2018 WL 385477, at *5 (E.D.N.Y. Jan. 11, 2018) ("Plaintiffs' . . . citation solely to New York law in support of their . . . claims in their prior submissions is deemed by this Court to constitute an implied consent to use New York law, which settles the choice of law issue in favor of the application of New York law.").

"Under New York law, insurance policies are interpreted according to general rules of contract interpretation." *Olin Corp. v. Am. Home Assur. Co.*, 704 F.3d 89, 98 (2d Cir. 2012). Accordingly, "unambiguous provisions of an insurance contract must be given their plain and ordinary meaning, and the interpretation of such provisions is a question of law for the court." *Burlington Ins. Co. v. NYC Transit Auth.*, 29 N.Y.3d 313, 321 (2017) (quoting *Vigilant Ins. Co. v. Bear Stearns Cos., Inc.*, 10 N.Y.3d 170, 177 (2008));

*see also Olin Corp.*, 704 F.3d at 99 ("[T]he words and phrases in a contract should be given their plain meaning[.]").

The parties frame the relevant issue as whether the November 2020 disability was "medically related" to the disability for which Twersky received benefits beginning in July 2019, and if not, whether she was entitled to more benefits. (*See* Pl.'s Opp at 1 ("The crux of the underlying dispute is that Defendant claims that the insured's claim for benefits . . . was a continuation of previous cancer. "); Def.'s Mot. at 7 ("Northwestern determined that the cause of the [November 2020] hospitalization was related to the underlying condition. . . . There was no new separate disability onset to affect the duration of benefits[.]")). Section 1.10's unambiguous language addresses this situation: when a person is disabled for more than "one cause," the duration of the benefits cannot exceed the period for any one cause. The first disability that Twersky suffered from is her cancer, and the Maximum Benefit Period for that disability—which the parties do not dispute—ended in March 2022 (when a total of 24 months of benefit payments were made). Assuming that the November 2020 chemotherapy reaction was another new cause of Twersky's disability, the maximum benefit period would not be until November 2022, but also March 2022. Otherwise, Section 1.10 would be violated because benefits would be paid for a period longer than the first cancer-related disability otherwise entitled her. Schrieber's arguments to the contrary are without merit.

According to Schreiber, there is an implied temporal limitation to Section 1.10 such that it only applies "where there are multiple causes all arising at the same time."

(Pl.'s Opp. at 6). But Section 1.10 does not have a temporal limitation—it applies whenever a person is disabled as a result of more than one cause. Schreiber's proposed limitation is nowhere in the contract; the Court cannot add to its terms. *Georgitsi Realty, LLC v. Penn-Star Ins. Co.*, 702 F.3d 152, 155 (2d Cir. 2012) ("[T]he court may not write into a contract conditions the parties did not insert by adding or excising terms under the guise of construction[.]" (quotation omitted)).

Even if, however, this plain reading of the Policies fails, Schrieber's claim still must be dismissed. That is, even if Section 1.10 did not bar the entitlement to benefits, Schreiber would still have to show—as an evidentiary matter—that Twersky's December 2020 disability was not causally related to the cancer that led to her initial disability. But to do so, he was required to proffer expert testimony about causation, which he did not.

Under New York Law, where the breach of contract claim is based upon a disability income insurance contract, and coverage depends upon the cause of the underlying disability falling within the policy coverage, the plaintiff bears the burden of proof. *U.S. Dredging Corp. v. Lexington Ins. Co.*, 99 A.D.3d 695, 696 (2d Dep't 2012) ("[A]n insured seeking to recover for a loss under an insurance policy has the burden of proving that a loss occurred and also that the loss was a covered event within the terms of the policy[.]" (quotation and citations omitted)); *Morgan Stanley Grp. Inc. v. New England Ins. Co.*, 225 F.3d 270, 276 (2d Cir. 2000) ("It is well established under New York law that a policyholder bears the burden of showing that the insurance contract covers the loss.").

This complexity exists in certain types of cases, such as those requiring determinations of the cause of certain medical illnesses. *Barnes v. Anderson*, 202 F.3d 150, 159 (2d Cir. 1999) ("[E]xpert medical opinion evidence is usually required to show the cause of an injury or disease because the medical effect on the human system of the infliction of injuries is generally not within the sphere of the common knowledge of the lay person.") (quoting *Shegog v. Zabrecky*, 654 A.2d 771, 776 (Conn. App. Ct. 1995)); *see, e.g.*, *Wills v. Amerada Hess Corp.*, 379 F.3d 32, 46 (2d Cir. 2004) (concluding expert testimony was required to determine the causal nexus between exposure to toxins and squamous cell carcinoma).

On the other hand, "where the matters are within the experience and observation of the ordinary jurymen from which they may draw their own conclusions and the facts are of such a nature as to require no special knowledge or skill," a party's claim survives without expert testimony. *Meiselman v. Crown Heights Hosp.*, 285 N.Y. 389, 396 (1941). "[E]xpert testimony is unnecessary in cases where jurors 'are as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training.'" *Wills*, 379 F.3d at 46 (quoting *Salem v. U.S. Lines Co.*, 370 U.S. 31, 35 (1962)). When causation "is sufficiently beyond the knowledge of the lay juror[,] . . . expert testimony is required to establish causation." *Id.* at 46.

There is one alleged issue of fact: whether Twersky's leiomyosarcoma, a form of cancer, (Def.'s 56.1 Stmt. ¶ 10; Pl.'s 56.1 Resp. ¶ 10), was related to her "multi organ break down that she experienced in November 2020[.]" (Pl.'s Opp at 1; Pl.'s Decl. ¶ 5).

This determination of causation is beyond that of a lay juror, and required the proffering of expert testimony to survive summary judgment. *Burgess v. Costco Wholesale Corp.*, No. 21-CV-5178, 2024 WL 4333617, at *8 (S.D.N.Y. Sep. 27, 2024) (finding plaintiff failed to submit the expert testimony necessary to create a genuine dispute as to "complex causation issues" regarding plaintiff's injuries from a fall). But Schreiber presents none. He provides only a declaration containing inadmissible hearsay—statements from Twersky's doctors—to support his proposition that the second disability was not causally related to the first. (Pl.'s Decl. ¶ 5 ("Her physicians did not believe that the multi-organ failure was caused by the cancer. They believe that the multi organ failure was triggered by a flare-up of a prior pulmonary issue that triggered the same. This pulmonary issue was a medical condition separate and apart from the cancer[.]")); *e.g.*, *Underkofler v. Cmty. Health Care Plan, Inc.*, 225 F.3d 646 (2d Cir. 2000) (table) ("[T]he district court properly rejected inadmissible hearsay in the form of an affidavit of plaintiff's wife stating that she overheard a conversation between two women[.]"); *Dorchester Fin. Holdings Corp. v. Banco BRJ, S.A.*, No. 11-CV-1529, 2014 WL 3747160, at *7 (S.D.N.Y. July 3, 2014) ("[The] declaration contain[s] inadmissible hearsay because [it] contain[s] information about what [Declarant] was told by an unidentified party.") (quotations omitted). There is plainly no admissible evidence provided to reach Schreibers's conclusion—he fails to provide not only expert testimony, but also any testimony in admissible form from Twersky's physicians.

And that requires summary judgment be granted to Northwestern, even in the absence of any expert report of its own. *See Perez v. United States*, 8 F. App'x 48, 52 (2d

Cir. 2001) ("[Defendant] had no burden to provide alternative proof of causation; it can simply rely on plaintiffs' failure of proof." (quotation omitted)); *Clark v. N.Y.C Hous. Auth.*, No. 20-CV-0251, 2022 WL 4229386, at *5 (S.D.N.Y. Sep. 14, 2022) ("The law is clear that where a nonmoving party bears the burden of proof on an issue, it is sufficient for the party moving for summary judgment to 'point out to the district court that there is an absence of evidence to support the nonmoving party's case.'" (quoting *Celotex*, 477 U.S. at 325) (cleaned up))), *R. & R. adopted*, 2022 WL 17974899 (Dec. 28, 2022), *aff'd*, No. 22-3233, 2023 WL 8071800 (2d Cir. Nov. 21, 2023).

## CONCLUSION

Northwestern's motion for summary judgment is granted. The sole claim for breach of contract is dismissed with prejudice. The Clerk is directed to enter judgment and close this case.

SO ORDERED.

*/s/ Sanket J. Bulsara*
SANKET J. BULSARA
United States District Judge

Date: November 10, 2026
Central Islip, New York